# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CDH FOOD & BEVERAGE, INC. <br> and DEBORAH "DEBBIE" DIAZ, | ) <br> ) <br> ) | |
| *Plaintiffs*, | ) <br> ) | No. 15 C 4282 |
| v. | ) <br> ) | Honorable Virginia M. Kendall |
| KANE COUNTY, ILLINOIS <br> and KANE COUNTY BOARD, | ) <br> ) <br> ) | |
| *Defendants*. | ) <br> ) <br> ) | |

## MEMORANDUM ORDER AND OPINION

Following the Kane County Board's ("the Board") denial of CDH Food & Beverage, Inc.'s ("CDH") application for a liquor license for its gentlemen's club, CDH and its owner, Deborah Diaz, filed this lawsuit alleging that the Board's refusal to issue the license violated the First and Fourteenth Amendments of the United States Constitution. Plaintiffs therefore seek declaratory relief (that the Court declare a provision of the Kane County Code unconstitutional), injunctive relief (enjoining Kane County from enforcing its unconstitutional statute), and compensatory and punitive damages for the loss of profits caused by Defendants' refusal to issue the liquor license.

Both parties now move for summary judgment, arguing that there are no material disputes of fact, and that both are entitled to judgment as a matter of law. For the reasons set forth below, the Court grants Defendants' Motion for Summary Judgment [21] and denies Plaintiffs' Motion for Summary Judgment [26].

1

## FACTS

In accordance with the Kane County Liquor Code, the local control commissioner is the chairman of the Kane County Board. She may appoint others to assist in exercising the powers. (Kane County Liquor Code, Dkt. 33-3, ¶¶ 3–55.) Those appointed, along with the control commissioner, constitute the local liquor control commission.

This case arises from the denial of Plaintiffs' liquor license application. On February 27, 2015, Plaintiff Deborah Diaz signed a lease agreement ("the Lease") with the owners of Blackjacks Gentlemen's Club ("Blackjacks") on behalf of her company, CDH Food & Beverage ("CDH"), to operate a new gentleman's club on the premises of Blackjacks. (Pl. SOF ¶¶ 5–6; Dkt. 33-1.) The Lease included an insurance provision requiring that Plaintiffs obtain liability insurance if liquor was sold on the premises. (Dkt. 33-1 at 6.) The provision further barred CDH from "selling or giving away" alcohol "without the express written consent of the Landlord." (*Id*.) Diaz, however, testified that she believed that the Lease included a contingency that if CDH were unable to obtain a liquor license at the property, then the Lease would be void. (Pl. Resp. ¶ 12.) Later in her deposition, Diaz conceded that the contingency she remembered may have been contained in a previous agreement and not in the Lease. (Def. SOAF ¶ 7.)

Shortly after signing the Lease, CDH applied for a liquor license from Kane County. (Pl. SOF ¶ 10.) On March 17, 2015, the Kane County Liquor Control Commission (the "Commission") heard CDH's case for why it should receive a liquor license. (Dkt. 29-2 at 22–24.) Plaintiffs claim that the Commission recommended to the Board that Plaintiffs be granted the liquor license for which they applied. (Pl. SOF ¶ 12.) In support of this fact, Plaintiffs cite to the meeting minutes[1] from the Kane County April 14, 2015 meeting. Nothing in the meeting

---

[1] Plaintiffs do not include a page number and instead cite to the entire exhibit.

minutes indicates that the Commission recommended CDH be granted a liquor license. Instead, the Commission denied CDH's application. (Dkt. 22 at 19.)

The Liquor Code does not prohibit gentlemen's clubs from obtaining licenses. To the extent that the Code regulates adult entertainment, the relevant provision prohibits licensees from lewd acts including the "displaying of breasts, buttocks, pubic hair, anus, vulva or genitals" at an establishment with a liquor license. (Dkt. 33-3 at 21.).

The particular liquor license the CDH applied for required the Board's approval because the Board limits the number of licenses in each township. The township in which Blackjacks is located had already reached its limit; granting the additional license, therefore, required the Board to pass an amendment to the ordinance. (Pl. SOF ¶ 12; Def. SOAF ¶¶ 9–10.)

On April 14, 2015, the Board voted against a motion to authorize an additional liquor license for CDH by a vote of seven ayes and sixteen nays. (Pl. SOF ¶ 13.) During that meeting, Diaz summarized her plans to open a club and introduced Michael Peter who had opened upscale clubs around the world and who discussed the financial benefits the proposed business would bring to the community. (Dkt. 29-3 at 6.) The Board asked Ms. Diaz how she would support her female employees regarding mental health issues and pointed out that only $1,172.00 was listed in the budget for security measures, which the Board estimated would double.[2] (Dkt. 29-3 at 6.) The members of the Board who voted "no" provided various explanations for their "no" votes. (Pl. SOF ¶¶ 15–26.) Some members voted "no" out of concerns for safety and traffic conditions. (Def. SOAF ¶ 12; Pl. SOF ¶ 22.) Others voted "no" because they believed that was what their constituents desired. (Pl. SOF ¶ 14.) Still others voted "no" out of concern that the gentleman's club might turn into a gambling establishment. (Pl. SOF ¶¶ 20–21.)

The final decision of the Liquor Commission states:

---

[2] There is no explanation for how the Board determined the exact calculation of the security budget.

> WHEREAS, the Liquor Control Commission recently met to review the Liquor License application of Thee [sic] Doll House[3] in unincorporated Kane County, and WHEREAS, there is a requirement that the County Board pass an ordinance to amend Appendix C of the Kane County Code to add a new Class AR liquor license for Thee [sic] Doll House in St. Charles Township prior to the issuance of a liquor license." Denied."

(Dkt. 22 at 19.) The Kane County Liquor Code also incorporates by reference the Illinois Liquor Act stating, in relevant part, "any order or action of a local liquor control commissioner...refusing to grant a license ... may, within 20 days after notice of such order or action, be appealed...to the State Commission." *Id.* After the Commission refused to grant Plaintiffs a liquor license, Plaintiffs did not appeal to the State Commission.

## LEGAL STANDARD

Summary judgment is proper only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A factual dispute is genuine if a rational trier of fact could return a verdict for the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). On cross-motions for summary judgment, the Court construes all facts and draws all reasonable inferences in favor of the party against which the motion under consideration was brought. *Nat'l Am. Ins. Co. v. Artisan and Truckers Cas. Co.*, 796 F.3d 717, 723 (7th Cir. 2015).

## DISCUSSION

Plaintiffs move for summary judgment, arguing that providing adult entertainment is protected speech, the Board's "unbridled discretion" to deny a liquor license "cannot be allowed," and the lack of procedural safeguards is prohibited under the First Amendment. (Dkt. 39 at 4.)

---

[3] The Dollhouse was the proposed name for the new club to be opened on the premise where Blackjack's is located.

Defendants move for summary judgment, arguing first that Plaintiffs do not have standing to bring their claims. (Dkt. 24.) Defendants claim that because the Lease forbade the sale of alcohol on the premises without the express written consent of the Landlord (which Plaintiffs did not have), no Constitutional deprivation was possible. Thus even if the Board had approved the license, Plaintiffs still would have been forbidden from serving alcohol.

Before addressing the summary judgment motions, the Court must address a fallacy weaved throughout Plaintiffs' arguments. Plaintiffs suggest, without support, that the Commission recommended their application for a license. In their Reply brief in support of their Motion for Summary Judgment, Plaintiffs state that they "do not complain of the actions of the Kane County Liquor Control Commission, which found that Plaintiffs had met all of the qualifications for issuance of the liquor license they sought." (Dkt. 39 at 2.) Instead, Plaintiffs charge the Kane County Board as unconstitutionally deciding whether a license is available "despite any finding by the Liquor commission." (*Id*.)

The Plaintiffs addressed the Board directly because the Board needed to amend the ordinance in order to allow another license above the number that the ordinance permitted. The Board heard the reasons from the Plaintiffs and then voted against amending the ordinance to add a higher number of licenses. As such, it is not accurate to say that the Commission approved the application and then the Board denied it. Plaintiffs might be suggesting that all of the requirements for the license were met and therefore that they should be granted a license without more. But that miscomprehends the posture of the case. The first reason that a license would not be given was that the number of licenses permitted under the statute had been issued. Plaintiffs do not contest that Defendants can set such a limit based on legitimate municipal concerns

5

regarding the secondary effect of issuing more licenses, nor could they because such concerns can be addressed by such a legal quota.

Possibly recognizing this first hurdle, Plaintiffs attempt to claim they were approved by the Commission as if the Board was then required to amend its ordinance. This misconception allows them to jump over that first hurdle which in and of itself could end their case. Of course, the reason Plaintiffs would want to jump over this step is because if there are only a limited number of licenses issued in the municipality then they could have investigated that public fact prior to leasing the property. If they had done their due diligence before entering into the lease, they would have known that there were no liquor licenses available and that they would have needed to petition for a change in the ordinance. That, in itself, would have dissuaded them from leasing the property. Now, after leasing, and not looking into the ordinance prior to entering the lease, Plaintiffs attempt to meld the whole process into one allegedly unconstitutional action by the Village.

*The Lease / Standing*

The Court begins by addressing the question of standing. *See Meyers v. Nicolet Restaurant of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016) (standing is a threshold question in every case because the court does not have authority to consider the merits if the plaintiff lacks standing). To establish Article III standing, a litigant must "prove that he has suffered a concrete and particularize injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 133 S.Ct. 2652, 2661 (2013). That being said, parties that are subject to licensing statutes that allegedly vest unbridled discretion in a licensing body may challenge those statutes facially, so long as the statutes

regulate expressive activity. *Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 802 (7th Cir. 2016).

Defendants argue that whether Plaintiffs suffered such an injury depends on whether the Lease permitted Plaintiffs to serve alcohol at the establishment. Or, put another way, the Lease and not the Board caused Plaintiffs' injury. The plain text of the Lease forbids the Tenant from selling alcohol on the premises without the express written consent of the Landlord. (Dkt. 33-1 at 6.) Plaintiffs ask the Court to rely on parol evidence to indicate that the Landlord had intended for Plaintiffs to serve alcohol on the premises. (Pl. Resp. ¶ 12.) But, under Illinois law, the Court must interpret unambiguous contracts without resorting to parol evidence. *In re Duckworth*, 776 F.3d 453, 456 (7th Cir. 2014). This Lease is unambiguous: it does not "authorize the use of the Premises for [the sale or giving away of alcohol] without the express written consent of the Landlord." (Dkt. 33-1 at 6.) Defendants argue that the lease, therefore, prohibits alcohol on the property and that is the injury, not the denial of the license.

The issue remains, however, whether a provision in a Lease with a third-party negates Plaintiffs' claim against the Board. The Illinois Liquor Control Act of 1934 specifically prohibits the issuance of liquor licenses to certain categories of applicants:

> § 6-2. Issuance of licenses to certain persons prohibited.
> (a) Except as otherwise provided in subsection (b) of this Section and in paragraph (1) of subsection (a) of Section 3-12, no license of any kind issue by the State Commission or any local commission shall be issued to:
> > (13) A person who does not beneficially own the premises for which a license is sought, or does not have a lease thereon for the full period for which the license is to be issued.
>
> 235 ILCS 5/6-2 (West 2015).

Defendants do not dispute that Plaintiffs "have a lease thereon for the full period for which the license is to be issued." 235 ILCS 5/6-2 (West 2015). That is all that the Code

7

requires if a person does not beneficially own the premise. It would be overreaching to interpret this section of the Act as prohibiting issuance of licenses to a person who has a lease that expressly requires written consent to serve liquor. Whether Plaintiffs obtain their license and proceed to violate their lease is not a situation regulated by the Act. Plaintiffs intended to open a new gentleman's club that served liquor and the Commission denied the application. Therefore, Plaintiffs experienced an injury because of the Commission's actions. *See Six Star Holdings*, 821 F.3d 795 (company had intention to engage in a course of conduct protected by the First Amendment and the conduct was proscribed by the ordinances giving the gentleman's club standing.)

*Limiting Number of Liquor Licenses*

Although Plaintiffs overcome this hurdle of standing, they do not and cannot challenge the validity of Kane County's quota of licenses. It is undisputed that Kane County has a limited number of liquor licenses and the County had already reached its quota. Plaintiffs, nevertheless, ignored this public fact and entered the agreement to open the gentlemen's club on the assumption that the Board would amend the amount of licenses in Plaintiffs' favor. But the Board has a right to impose such a quota and Plaintiffs do not have a property right in a license that they never had in the first place.

"The power to license, regulate, or prohibit liquor sales is a matter of the police powers of the state and, if so delegated, local municipalities[.]." *Vino Fino Liquors, Inc. v. License Appeal Comm'n of City of Chicago*, 394 Ill. App. 3d 516, 523 (Ill. App. 4d 2009) (internal citations omitted). Included in these police powers is a municipality's discretion in limiting liquor licenses:

> In every city, village or incorporated town, the city council or president and board of trustees, and in counties in respect of

> territory outside the limits of any such city, village or incorporated town the county board shall have the power by general ordinance or resolution to *determine the number*, kind and classification of licenses, for sale at retail of alcoholic liquor[.]

235 ILCS 5/4-1 (West 2016) (emphasis added). Here, Plaintiffs do not challenge the limit on the number of liquor licenses. Plaintiffs also do not contest that there were no available licenses when Plaintiffs submitted their application. Plaintiffs, therefore, were not simply applying for a liquor license but applying for an unavailable liquor license that would require amendment by the Board to Kane County's ordinance. Limiting the number of licenses was well within Defendants' discretion and the Board's decision not to amend the ordinance did not implicate Plaintiffs' constitutional rights. The First Amendment arguments are a distraction from this dispositive procedural backdrop.

Furthermore, Plaintiffs do not have a property right at stake when they never had a license to begin with. An Illinois liquor license is a form of property within the meaning of the due process clause of the Fourteenth Amendment. *See Club Misty, Inc. v. Laski*, 208 F.3d 615, 618 (7th Cir.2000) (citing *Reed v. Village of Shorewood*, 704 F.2d 943, 948-49 (7th Cir.1983), *overruled on other grounds* by *Brunson v. Murray*, 843 F.3d 698, 713 (7th Cir. 2016)). However, a "[p]laintiff's right to this license is not vested by virtue of her mere application for it. Rather, her interest in the license is "meager, transitory, or uncertain." *Reed,* 704 F.2d at 948. "There is no right to sell alcoholic beverages; the privilege of doing so is always subject to governmental control." *Vino Fino Liquors, Inc. v. License Appeal Comm'n of City of Chicago*, 394 Ill. App. 3d 516, 523, 914 N.E.2d 724, 730–31 (2009) (internal quotation omitted).

Disregarding this distinction between a revocation and a denial, Plaintiffs cite to revocation cases to support their summary judgment motion. In *Reed*, the court held that an

9

Illinois liquor license is a property right within the meaning of the Fourteenth Amendment and therefore was revocable only for cause. 704 F.3d at 948–49. The court further held:

> For most purposes, perhaps for all but one purpose, an Illinois liquor license is not property; but insofar as it is revocable (or nonrenewable) only for cause, it is property for purposes of determining whether the state can deprive the licensee of it without according him due process of law.

*Id.* at 619 (citing *Baer v. City of Wauwatosa*, 716 F.2d 1117, 1122 (7th Cir. 1983)). *Reed* made clear that only for the purpose of revocability was an Illinois license property—not for purposes of applying for such a license. Because Kane County has the discretion to limit the number of liquor licenses granted and because Plaintiffs do not have a property interest in a license that they never had, summary judgment is appropriate in favor of Defendants.

*First Amendment*

Ignoring the above explained posture of this case, Plaintiffs suggest that Kane County's scheme violates the First Amendment. The adult entertainment offered at Plaintiffs' club is undoubtedly expressive conduct. *See, e.g. City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) (nude dancing is expressive conduct that falls within "the outer ambit of the First Amendment's protection); *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 54 (1986) (the First Amendment requires that governments refrain from denying people the opportunity to own and operate adult entertainment venues). Although the performances themselves are within the limits of the constitutional freedom of expression, the critical fact in Defendants' favor is that there is neither a prohibition in the Liquor Code nor in Kane County's broader "scheme" that prohibits the expression of erotic dancing. Instead, Defendants are regulating the issuance of liquor licenses and the secondary effects of such issuance to an adult entertainment venue. *See Ben's*

*Bar, Inc. v. Village of Somerset*, 316 F.3d 702, 710 (7th Cir. 2003) (citing *California v. LaRue*, 409 U.S. 109, 118–19 (1972)). On these facts, intermediate scrutiny is appropriate.

Regulations of adult entertainment receive intermediate scrutiny if they are designed not to suppress the "content" of erotic expression, but rather to address the negative secondary effects caused by such expression. *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 426 (2002) (plurality opinion); *id.* at 444 (Kennedy, J., concurring); *see also Renton*, 475 U.S. at 48. Because Kane County's Liquor Code in no way is designed to suppress the "content" of the erotic message, intermediate scrutiny is appropriate. *Ben's Bar* is instructive. 316 F.3d 702. A tavern and two nude dancers brought an action against the city seeking declaratory and injunctive relief against enforcement of ordinance that prohibited sale, use, or consumption of alcohol on premises of "Sexually Oriented Businesses," in violation of the First and Fourteenth Amendments. Based on the road map provided by the Supreme Court in *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996), a liquor regulation prohibiting the sale or consumption of alcohol on the premises of adult entertainment establishments is constitutional if: (1) the State is regulating pursuant to a legitimate governmental power, *U.S. v. O'Brien*, 391 U.S. at 367, 377 (1968); (2) the regulation does not completely prohibit adult entertainment, *Renton*, 475 U.S. at 46; (3) the regulation is aimed not at the suppression of expression, but rather at combating the negative secondary effects caused by adult entertainment establishments, *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289–91 (2000); and, (4) the regulation is designed to serve a substantial government interest, narrowly tailored, and reasonable alternative avenues of communication remain available, *see Alameda Books*, 535 U.S. at 434–35 (2002) (plurality opinion); *id.* at 445 (Kennedy, J. concurring).

Applying this analytical framework, the regulation in *Ben's Bar* did not violate the First Amendment. 316 F.3d 702. First, it was clearly within the village's general police powers to regulate alcohol sales and consumption in "inappropriate locations." *Id.* at 711 (citing *44 Liquormart,* 517 U.S. at 515.) The second and third prongs were met because the relevant regulations did not target the content of the speech but instead whether alcohol could be consumed or sold during the expression of the speech, "[i]n the absence of alcohol, Ben's Bar's dancers are free to express themselves all the way down to their pasties and G-strings." *Id.* at 708. Finally, in *Ben's Bar*, the ordinance served a legitimate government purpose and was narrowly tailored because "[p]rohibiting alcohol on the premises of adult entertainment establishments will unquestionably reduce the enhanced secondary effects resulting from the explosive combination of alcohol consumption and nude or semi-nude dancing." *Id.* at 727-728.

For the same reasons applied in *Ben's Bar*, the Liquor Code here is facially constitutional. Kane County holds the same general police powers to regulate alcohol sales and consumption and deny a gentleman's club a liquor license. Next, even though Plaintiffs' were denied a license, Kane County does not have a broader prohibition on gentleman's clubs obtaining a liquor license. The Liquor Code contemplates that liquor licenses may be granted to gentleman's clubs so long as certain body parts are covered up. In other words, there is even more speech facially protected by the Code than the ordinance in *Ben's Bar* because there, even when women had "g-strings and pasties," a business was prohibited from selling alcohol. Moreover, neither the Liquor Code nor the licensing scheme is aimed at the content of the speech. The text of the ordinance, any preamble or express findings of the Board, and studies and information of which the Board members were clearly aware are relevant in determining whether the ordinance targets the content of the expression or the negative secondary effects. *Id.*

at 723 n.28. Here, the Code does not target the erotic message conveyed. Additionally, the meeting minutes show that the Board was not concerned with prohibiting the speech, but instead the secondary effects of alcohol sale and consumption on a premise with nude dancing. Members voiced concerns ranging from traffic to economic considerations. (Dkt. 29-3 at 6.) Others shared concern regarding the well-being of the dancers' mental health and whether Plaintiffs had enough money in their budget to provide security.[4] (*Id.*) None of the members expressed concerns about the erotic content itself, only these secondary effects. Finally, the same presumption is applicable that the ordinance here served a legitimate government purpose and was narrowly tailored because the scheme reduces the secondary effects of nude-dancing combined with alcohol consumption while protecting the dancing. *Id.* at 727–28.

*Unbridled Discretion / Procedural Safeguards*

Plaintiffs further challenge that the "scheme" affords unbridled discretion to the Board and lacks procedural safeguards given this discretion.

Turning first to unbridled discretion, the standard is usually applied in circumstances where the law at issue either explicitly involves censorship, such as the law governing the Maryland board of censors at issue in *Freedman v. Maryland,* 380 U.S. 51 (1965), or when the law at issue presents a significant censorship risk, such as when a single person is granted power to decide whether a group will be allowed to hold a rally in a public park, *see American Knights of Ku Klux Klan v. City of Gary, Indiana,* 334 F.3d 676, 683 (7th Cir. 2003), or when a single person is granted power over a newspaper's ability to sell papers, *see City of Lakewood v. Plain Dealer Pub'g Co.,* 486 U.S. 750 (1988). *City of Lakewood*, cited by Plaintiffs, was concerned with a licensing statute that vested unbridled discretion in a government official over whether to

---

[4] The First Amendment does not require the Board "to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *Renton,* 475 U.S. at 51–52.

13

permit or deny expressive activity—a newspaper's ability to sell papers. 486 U.S. at 750. The mayor was given complete discretion in making that determination. This unfettered discretion "coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused." But while Plaintiffs quote this language in their brief, here the nude dancing currently occurs on the premise without any censoring at all. (Pl. SOF ¶¶ 5–6; Dkt. 33-1.) Concerns of potential self-censorship, therefore, are not applicable. Moreover, the record does not demonstrate that only one person in Kane County makes licensing determinations that could potentially target speech. Instead, the Board held a hearing, Plaintiffs presented at that hearing, the motion to amend the ordinance by the amount of liquor licenses was brought to a vote, and Plaintiffs had the opportunity to appeal that vote.

Just as the "unbridled discretion" standard is aimed at protection from censorship, so too are the required procedural safeguards Plaintiffs claims they are entitled to but are absent from the licensing scheme. Chief among those requirements is that any final decision on an application to engage in speech must be made promptly and the procedure must assure prompt judicial review. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990) (ordinance did not provide possibility for prompt judicial review in the event license was erroneously denied.) Plaintiffs' argument fails for at least three reasons. First, promptness is required when the government's "permission is required for speech to proceed." (Dkt. 27 at 9.) For example, Plaintiffs cite to *Church of American Knights of Ku Klux Klan v. City of Gary, Indiana*, in which the KKK challenged a restriction requiring application for a permit to march 45 days in advance of the march that was an arbitrary delay "obviously aimed at the Klan," and other groups often sought permits in Gary no more than two weeks before planned events. 334 F.3d 676, 683 (7th

Cir. 2003). But there, whether or not the permit was issued would determine whether or not the KKK could engage in the speech. Here, regardless of whether the application on the liquor license is given, Plaintiffs are still able to convey the speech, indeed they are already dancing at Blackjack's, just without alcohol.

Second, Plaintiffs allege that there is a lack of procedural safeguards relating to appellate review. Plaintiffs disagree that an appellate process was available here. The Kane County Liquor Code states that: "any and all sections of the Illinois liquor control law and any amendments thereto applicable to local liquor control commissions, or to local liquor control commissioners in counties, be and are the same hereby adopted and made a part of this chapter." § 3.7. In Illinois, it is permissible to incorporate a statute by reference in local regulations. *See People v. Lewis,* 125 N.E.2d 87, 89–90 (1955); (Dkt. 35 4-5.). In relevant part, the Illinois Liquor Control Act of 1934, 235 ILCS 5/7 9 (West 2016) states "any order or action of a local liquor control commissioner…refusing to grant a license…may, within 20 days after notice of such order or action, be appealed…to the State Commission. *Id.* It is permissible to incorporate a statute by reference. *Lewis,* 125 N.E.2d at 89–90. Plaintiffs respond that the cited portion of the statute applies to the Commissioner, not to the Board. This distinction is not supported by the record. With no support, Plaintiffs suggest that the Commissioner recommended their application to the Board. The Commission made the final decision by denying the license. Plaintiffs should have appealed the denial of the license using the state statute available to them to do so. They failed to do so and instead filed this case. There was no due process violation because a procedure was in place that Plaintiffs merely failed to use. Even if this federal case were properly before this Court, there was no constitutional violation by the City when the Board refused to amend its valid ordinance to accommodate Plaintiffs.

.

## **CONCLUSION**

Plaintiffs' Motion for Summary Judgment [26] is denied. Defendants' Motion for Summary Judgment [21] is granted.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: September 29, 2017